Shawn P. Bailey (ISB #7387)
Email: sbailey@bearnsonpeck.com
Shaun L Peck (UT #7595)
Email: speck@bearnsonpeck.com
Brandon J. Baxter (UT #9122)
Email: bbaxter@bearnsonpeck.com
BEARNSON & PECK, LC
399 North Main Street, Suite 300
Logan, UT 84321
Telephone: (435) 787-9700
Facsimile: (435) 787-2455
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF IDAHO
EASTERN DIVISION

| | |
|---|---|
| ALAN K. VAN ORDEN, Personal Representative of the Estate of Crystal Rhea Bannister, ROBERT BANNISTER, as a parent and legal heir of Chrystal R. Bannister, and MICHELLE WALESKE, as a parent and legal heir of Crystal R. Bannister.<br><br>    Plaintiffs,<br><br>v.<br><br>CARIBOU COUNTY; CARIBOU COUNTY SHERIFF'S DEPARTMENT, an Office Controlled and Directed by Caribou County; RIC L. ANDERSON, in his individual capacity and in his official capacity as Sheriff of Caribou County; MICHAEL HADERLIE, in his individual capacity and in his official capacity as Commander of the Caribou County Jail; BROCK LOPEZ, in his individual capacity and in his official capacity as Detention Sergeant of the Caribou County Jail; HEATH S. DOWNS, an individual; BRANDY BREDEHOFT, and individual; JUDY PROBART LONG, an individual; JODI SUTER, an individual; BRETT SMITH, an individual; and John Does 1 through 10<br><br>    Defendants. | Case No. 4:10-CV-385-BLW<br><br>**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

FIRST AMENDED COMPLAINT AND JURY DEMAND     1

Plaintiffs Alan K. Van Orden, Robert Bannister, and Michelle Waleske complain and allege against defendants as follows:

### PARTIES AND JURISDICTION

1. Crystal Rhea Bannister died while in the custody, care, and direct supervision of the defendants named in this Complaint. Prior to her death, Crystal resided in Bear Lake County, Idaho.

2. Plaintiff Alan K. Van Orden has been appointed under Idaho Law as the Personal Representative of the Estate of Crystal Rhea Bannister.

3. Plaintiff Robert Bannister is Crystal's father. Robert Bannister is an heir entitled to Crystal Bannister's property under Idaho's intestate succession statutes. Robert Bannister resides in Vancouver, Washington.

4. Plaintiff Michelle Waleske is Crystal's mother. Michelle Waleske is an heir entitled to Crystal Bannister's property under Idaho's intestate succession statutes. Michelle Waleske resides in Vancouver, Washington.

5. Defendant Caribou County is located in the State of Idaho. Caribou County "is a body politic and corporate" that has the "power ... [t]o sue and be sued" under Idaho Code §§ 31-601 and 31-604.

6. Defendant Caribou County Sheriff's Department is a government agency controlled and directed by Caribou County and Caribou County agents and employees.

7. Defendant Ric L. Anderson has been at all relevant times the Sheriff of Caribou

County. On information and belief, Sheriff Anderson resides in Caribou County.

8.  Defendant Michael Haderlie has been at all relevant times the Commander of the Caribou County Jail. On information and belief, Mr. Haderlie resides in Caribou County.

9.  Defendant Brock Lopez has been at all relevant times the Detention Sergeant of the Caribou County Jail. On information and belief, Mr. Lopez resides in Caribou County.

10. Defendant Heath S. Downs has been at all relevant times a Detention Deputy assigned to the Caribou County Jail. On information and belief, Mr. Downs resides in Caribou County.

11. Defendant Brandy Bredehoft has been at all relevant times a Detention Deputy assigned to the Caribou County Jail. On information and belief, Ms. Bredehoft resides in Caribou County.

12. Defendant Judy P. Long has been at all relevant times a Dispatcher employed by Caribou County. On information and belief, Ms. Long resides in Caribou County.

13. Defendant Jodi Suter has been at all relevant times a Dispatcher employed by Caribou County. On information and belief, Ms. Suter resides in Caribou County.

14. Defendant Brett Smith has been at all relevant times a Physician Assistant employed by Caribou County and assigned to the Caribou County Jail. On information and belief, Mr. Smith resides in Caribou County.

15. Defendants John Does 1 through 10 were other personnel employed by Caribou County who committed actions alleged herein whose identities are unknown to Plaintiffs.

16.     Jurisdiction is proper in this Court under 28 U.S.C. §§ 1331, 1343, and 1367. Plaintiffs' First Claim for Relief arises under the United States Constitution and 42 U.S.C. § 1983, and Plaintiffs' Second Claim for Relief forms part of the same case or controversy as the First Cause of Action.

17.     Venue is proper in this Court under 28 U.S.C. § 1391 and Local Rule 3.1.

### GENERAL ALLEGATIONS

**A.      The Defendants Owed a Duty of Care to Crystal R. Bannister.**

18.     Personnel from the Caribou County Jail took Crystal into their custody at approximately 11:30 am on August 25, 2009.  Crystal had been delivered to the Caribou County Jail by the Bear Lake County Sheriff's Department.

19.     When the defendants took Crystal into their custody, they failed to provide Crystal the necessary medical treatment and medications that would have protected Crystal from self-harm.  The defendants also failed to take other reasonable steps that would have protected Crystal from self-harm.

20.     The defendants owed a duty of care to Crystal under the common law of Idaho and the 14th Amendment to the United States Constitution. Under the common law of Idaho, the defendants had a duty to exercise reasonable and prudent care under the circumstances. Likewise, under the 14th Amendment, the defendants had a duty to not be deliberately indifferent to Crystal's serious medical needs and to take reasonable measures to prevent Crystal from harming herself.

21.     Robert Bannister and Michelle Waleske's ongoing parent-child relationship with Crystal Bannister was protected by the 1st and 14th Amendments. The defendants had a duty to not be deliberately indifferent to—or to interfere in an unwarranted manner with— this constitutionally protected relationship.

**B.     The Defendants Knew That Crystal Bannister: (1) Had Serious Medical Needs, and (2) Posed a Serious Risk of Attempting Suicide.**

22.     Approximately four hours before Defendants took Crystal into their custody, Crystal had been released from Bear Lake Memorial Hospital where she had been under treatment for a suicide attempt which occurred on/or about August 22, 2009.

23.     When the defendants took Crystal into the custody of the Caribou County Jail, they were informed of Crystal's recent suicide attempt, her subsequent medical treatment, her serious illness, and her medication requirements.

24.     During the time that Crystal was incarcerated in the Caribou County Jail, each of the defendants knew or should have known of Crystal's recent suicide attempt, her subsequent medical treatment, her illness, and her medication requirements.

25.     Furthermore, prior to August 2009, Crystal had been hospitalized on four other instances for suicide attempts. The defendants knew or should have known about these prior suicide attempts.

26.     At the time that Defendants took Crystal into their custody, Crystal had been prescribed several medications as part of her medical treatment. These medications included:

- Clonipine (an anti-anxiety medication);
- Zanax (an anti-anxiety medication);

FIRST AMENDED COMPLAINT AND JURY DEMAND    5

- Lexapro (an anti-depressant); and
- Methadone (a synthentic opioid used to treat opiate dependence).

27. These prescribed medications prevented Crystal from suffering severe symptoms that included anxiety, depression, extreme restlessness, severe cravings, muscle spasms, joint and muscle pain, vomiting, diarrhea, chills, and so forth.

28. Each of the defendants knew or should have know about the medications which had been prescribed for Crystal's well-being. Each of the defendants knew or should have known that Crystal would suffer severe symptoms if she was not provided with her prescribed medications.

29. During the jail intake process, Crystal informed the defendants regarding: (1) her suicide attempt immediately preceding her detention in the Caribou County Jail, (2) her ongoing medical treatment, and (3) her prescribed medications. The defendants created an intake record based on their knowledge of these three facts.

30. The defendants knew or should have known of the need to obtain Crystal's prescribed medications and to deliver them to Crystal.

31. After the defendants took Crystal into their custody, Crystal asked the defendants to provide her with her prescribed medications.

32. After the defendants took Crystal into their custody, Crystal asked the defendants to take her to the hospital or to allow her to meet with a counselor for treatment of her symptoms.

33. After the defendants took Crystal into their custody, they discussed with each other Crystal's prior suicide attempt, her medical treatment, and her prescription medication needs.

34. Based on these circumstances, some of the defendants understood that Crystal was on "suicide watch."

35. The defendants were also aware of other circumstances that exacerbated the risk of Crystal causing harm to herself, including the following:

- Crystal and her boyfriend had recently separated;
- Crystal's living circumstances were uncertain because of the separation;
- Crystal was frightened because she had not been in jail before; and
- Crystal didn't know how to or was unable to post bond to secure her release from jail.

**C.   The Defendants Failed to Address Crystal Bannister's Serious Medical Needs.**

36. The defendants failed to properly identify and assess Crystal's serious medical needs during the jail intake process.

37. The defendants failed to have a qualified medical professional appropriately evaluate Crystal to determine what precautions the defendants should take to address Crystal's serious medical needs after the defendants learned about Crystal's recent suicide attempt and ongoing medical treatment.

38. The defendants failed to clearly designate Crystal as being on suicide watch after learning about Crystal's recent suicide attempt and ongoing medical treatment.

39. The defendants failed to provide Crystal's prescribed medications to her.

40. The defendants failed to take Crystal to the hospital or to meet with a counselor after Crystal requested treatment for her medical conditions.

41. The defendants discouraged Crystal from requesting medical treatment or assistance.

**D.    The Defendants Failed to Take Precautions to Prevent Crystal From Harming Herself.**

42. The defendants failed to place Crystal in an area of the jail with other inmates who could have intervened or called for help to prevent Crystal from harming herself. Instead, the defendants placed Crystal alone in a holding cell.

43. The defendants also failed to place Crystal in a suicide-resistant cell or to make other arrangements that would have protected Crystal from self-harm. Defendants failed to provide Crystal with suicide-resistant clothing, sheets, and/or blankets.

44. Instead, the defendants placed Crystal in a cell which contained a vent to which a ligature could be attached. The defendants placed Crystal in a cell where the bed was positioned under a vent to which a ligature could be attached. The defendants further provided Crystal with a storage box which could be used to help reach a vent to which a ligature could be attached. The defendants further supplied to Crystal regular clothing, sheets, and blankets that could be used as a ligature.

45. The defendants failed to properly monitor Crystal.

46. Between the hours of 5 p.m. and 9 p.m. on August 25, 2009, defendant Heath Downs was on duty at the Caribou County Jail.

47. During this time period, Mr. Downs had a responsibility to properly monitor Crystal. However, Mr. Downs was unable to do so or failed to do so.

48. During this time period, Mr. Downs was performing other duties or activities that interfered with his proper monitoring of Crystal. Mr. Downs's other duties or activities included:

- cleaning cell blocks;
- moving cleaning supplies;
- moving inmates such as kitchen workers;
- taking out trash; and
- facilitating communications between inmates and their legal counsel.

49. Mr. Downs failed to properly monitor Crystal during the time period where she repeatedly attempted and finally succeeded in committing suicided.

50. Between the hours of 7 p.m. and 9 p.m. on August 25, 2009, Defendant Judy P. Long was on duty at the Caribou County Jail.

51. During this time period, Ms. Long had a duty to properly monitor Crystal. However, Ms. Long was unable to do so or failed to do so.

52. During this time period, Ms. Long was performing other duties or activities that interfered with her proper monitoring of Crystal. Mr. Downs's other duties or activities included:

- dispatch work;
- preparation of warrants; and

      •        preparing taxes

53.      Ms. Long failed to properly monitor Crystal during the time period where Crystal repeatedly attempted and finally succeeded in committing suicide.

**E.**      **Caribou County and the Sheriff's Department Are Directly Responsible.**

54.      Administrative responsibility for the Caribou County Jail and jail personnel rested with the following defendants:

- Caribou County;
- Caribou County Sheriff's Department;
- Ric L. Anderson; Sheriff of Caribou County;
- Michael Haderlie, Commander of the Caribou County Jail; and
- Brock Lopez, Detention Sergeant of the Caribou County Jail.

55.      The many failures detailed in paragraphs 18-52 were caused by the improper decisions and failures of the defendants listed in paragraph 53.

56.      These improper decisions and failures include:

- failure to adopt and/or implement appropriate policies to address inmate medical needs, including but not limited to suicide prevention policies;
- failure to appropriately train jail personnel;
- failure to appropriately direct jail personnel;
- failure to appropriately supervise jail personnel;
- failure to appropriately assign jail personnel; and/or

- failure to appropriately entrust jail personnel.

57. Each of the defendants acted under color of state law (and, as applicable, in the scope and course of his/her employment) in committing the acts alleged in this Complaint.

58. Crystal Bannister died as a direct and proximate result of the defendants' actions described in this Complaint, which constitute gross negligence, willful and wanton conduct, and deliberate indifference to Crystal's serious medical needs and other constitutional rights.

59. When defendants caused Crystal Bannister's death, they were deliberately indifferent to and interfered in an unwarranted manner with Robert Bannister and Michelle Waleske's constitutionally protected parent-child relationship with Crystal.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Constitutional Torts Under the United States Constitution ( 14th Amendment) and 42 U.S.C. § 1983 – Against All Defendants**

60. Plaintiffs incorporate herein the allegations of paragraphs 1-59.

61. Crystal Bannister had a right to be free from cruel and unusual punishments and other violations of her liberty interests under the 14th Amendment to the United States Constitution.

62. The defendants violated Crystal Bannister's constitutional rights by engaging in the pattern of conduct alleged herein, which constituted: (1) deliberate indifference to Crystal's medical, health, and safety needs, (2) gross negligence, and/or (3) willful and wanton conduct.

63. Crystal Bannister died as a direct and proximate result of the defendants' violation of her constitutional rights.

64. Crystal Bannister's parents, estate, and/or heirs are entitled to wrongful death damages, survival damages, punitive damages, and all other damages available in § 1983 cases in an amount to be proved at trial.

## SECOND CLAIM FOR RELIEF
### Constitutional Torts Under the United States Constitution (1st and 14th Amendments) and 42 U.S.C. § 1983 – Against All Defendants

65. Plaintiffs incorporate herein the allegations of paragraphs 1-64.

66. Robert Bannister and Michelle Waleske's parent-child relationship with Crystal was protected by the 1st and 14th Amendments

67. The defendants were deliberately indifferent to—and interfered in an unwarranted manner with—Mr. Bannister and Ms. Waleske's constitutionally protected parent-child relationship with Crystal when they caused Crystal's tragic and preventable death.

68. Mr. Bannister and Ms. Waleske's constitutionally protected parent-child relationship with Crystal was destroyed as a direct and proximate result of the defendants' violation of their constitutional rights.

69. Mr. Bannister and Ms. Waleske are entitled to all damages available in § 1983 cases, including punitive damages, in an amount to be proved at trial.

## THIRD CLAIM FOR RELIEF
### Negligence – Against All Defendants

70. Plaintiffs incorporate herein the allegations of paragraphs 1-69.

71. The defendants owed common law duties of care to Crystal Bannister.

72. The defendants breached their duties of care to Crystal in several ways, including:

  (1)  Engaging in the conduct alleged herein, which constitutes negligence;

  (2)  Negligently failing to adopt and/or implement appropriate policies to address inmate medical needs, including but not limited to suicide prevention policies;

  (3)  Negligently failing to appropriately train employees;

  (4)  Negligently failing to appropriately direct employees;

  (5)  Negligently failing to appropriately supervise employees;

  (6)  Negligently failing to appropriately assign employees; and

  (7)  Negligently failing to appropriately entrust employees.

73. Crystal Bannister died as a direct and proximate result of the defendants' violations of their duties of care to her.

74. Crystal Bannister's legal heirs are entitled to damages in an amount to be proved at trial.

### JURY DEMAND

The plaintiffs hereby demand a trial by jury.

### PRAYER FOR RELIEF

Wherefore, the plaintiffs pray for relief as follows:

1. Wrongful death damages, survival damages, punitive damages, and all other damages available in § 1983 cases in an amount to be proved at trial on their First Cause of Action.

2. All damages available in § 1983 cases, including punitive damages, in an amount

to be proved at trial on their Second Cause of Action.

      3.      Damages in an amount to be proved at trial on their Third Cause of Action.

      4.      Attorney fees under 42 U.S.C. § 1988.

      5.      Pre-judgment, post-judgment interest, and costs.

      6.      Such other and further relief as the Court deems proper.

DATED this 31st day of March, 2011.

                              PECK HADFIELD BAXTER & MOORE, LLC

                              */s/ Shawn P. Bailey*
                              Shawn P. Bailey
                              Shaun L Peck
                              Brandon J. Baxter
                              Attorneys for Plaintiffs