UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALAN K. VAN ORDEN, Personal Representative of the Estate of Crystal Rhea Bannister; ROBERT BANNISTER, legal heir of Crystal R. Bannister; and MICHELLE WALESKE, legal heir of Crystal R. Bannister,<br><br>     Plaintiffs,<br>  v.<br><br>CARIBOU COUNTY, a political subdivision of the State of Idaho; CARIBOU COUNTY SHERIFF'S DEPARTMENT, an Office Controlled and Directed by Caribou County; RIC L. ANDERSON, Sheriff of Caribou County; MICHAEL HADERLIE, an individual; BROCK LOPEZ, an individual; HEATH S. DOWNS, an individual; JUDY PROBART LONG, an individual, BRANDI BREDEHOFT, an individual, JODI SUTER, an individual; BRETT SMITH, an individual; and JOHN DOES 1 through 10,<br><br>     Defendants. | Case No. 4:10-cv-00385-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

This case arises out of the death of Crystal R. Bannister, following her suicide while in custody as a detainee in the Caribou County Jail.  Alan Van Orden, as representative of Crystal's estate, Robert Bannister, Crystal's father, and Michelle Waleske, Crystal's mother, brought suit against Caribou County, the Caribou County Sheriff's Department, Sheriff Ric Anderson (collectively, "the County") and several sheriff's deputies and dispatchers who were on duty at the jail on the night of Crystal's death.

Previously, the Court granted summary judgment to all the defendants because, in the Court's opinion, there was no evidence the individual defendants were subjectively aware that Crystal posed a heightened risk of suicide.  The Ninth Circuit reversed and remanded, holding that (1) summary judgment was inappropriate as to Deputy Heath Downs and Dispatcher Judy Long, (2) the County may be liable independent of the liability of the individual defendants, and (3) the plaintiffs stated a state-law wrongful-death claim.  Before the Court on remand are the defendants' motions for reconsideration and summary judgment and the plaintiffs' motion for summary judgment regarding defendants' various affirmative defenses.  For the following reasons, the Court will deny the defendants' motion for reconsideration; grant in part and deny in part the defendants' motion for summary judgment; and grant in part and deny in part plaintiffs' motion for summary judgment.

# BACKGROUND

For an understanding of the events surrounding Crystal's death and the individual defendants' interactions with Crystal, the Court directs the reader to the statement of facts from the Court's previous *Memorandum Decision and Order.* Dkt. 154, at 2-5. However, to understand this decision, it is necessary to point out, consistent with the Ninth Circuit's memorandum disposition, that there is sufficient evidence in the record to allow a jury to conclude that Deputy Downs and Dispatcher Long were subjectively aware that Crystal was at imminent risk of suicide. *Van Orden v. Caribou Cnty.*, 546 F. App'x 647 (9th Cir. 2013). It is also necessary to describe the County's policies governing the administration of the Caribou County Jail that are at issue in this case.

### 1.      The Jail's Staffing Policy

At the time of these events, the jail was routinely staffed with one detention deputy and one dispatcher. *Pls.' Stmt. of Facts*, dkt 134, ¶26. The deputy was largely responsible for supervising the inmates and attending to their needs. As assistance for the deputy, the dispatcher was to monitor the inmates via television monitors and could respond to inmates using the jail's intercom system. *Id.* ¶34. If an issue arose, the dispatcher could alert the deputy. *Id.* The dispatcher's monitoring duties were complicated by the fact that the monitors were located approximately sixteen feet to the left and behind where the dispatcher sat. *Anderson Aff.*, dkt. 93-3, ¶4. Additionally, the dispatcher had several other duties unrelated to inmate supervision. *Pls.' Stmt. of Facts*,

dkt. 134, ¶34.  These duties made it more difficult for the dispatcher to perform her monitoring duties in a timely manner.  *Id.*

In a series of letters dating from 2006 to 2009, the Idaho Sheriff's Association ("ISA") warned that staffing the jail with one deputy and one dispatcher created "a perilous position should there be an incident in the jail."  *Ex. 58*, dkt. 135-1, at 2.  In accordance with ISA standards, the letters recommended that the jail be staffed with two deputies assigned to the floor.  The last of these letters, dated February 2009, cautioned that "[f]acilities that use a detention officer and a dispatcher to meet the staff component as required in the standard are setting themselves up for potential disaster.  If an emergency occurs in the jail, the dispatcher cannot leave his or her post and the detention deputy will not have immediate assistance available."  *Ex. 60*, dkt. 135-1, at 2 (internal quotation mark and emphasis omitted).

In 2006, at the sheriff's invitation, Rocky Mountain Corrections, Inc. ("RMC") sent a team of inspectors to audit the jail.  The purpose of the audit was to identify issues that could be corrected to improve the jail's operations and reduce the County's and officers' potential liability.  *RMC Depo.*, dkt. 191-6, at 12-13; *Malm Depo.*, dkt. 189-5, at 16.  Following the audit, the team prepared a needs assessment, which contained certain recommendations.  The RMC Needs Assessment warned against the jail's staffing policy: "In a facility [of the jail's] size, there should always be a minimum of two people on shift for safety and security. . . . If an inmate attempts suicide, the attempt may be successful before staff can respond because of being busy elsewhere in the facility and not having

4

any assistance." *RMC Needs Assessment*, ex. 61, dkt. 135, at 2. Additionally, the needs assessment suggested that the equipment in dispatch be moved "so that the dispatcher can safely monitor everyone that she is responsible for." *Id.* at 19. RMC sent the needs assessment to Sheriff Van Vleet. *RMC Depo.*, dkt. 191-6, at 17. (At the time of Crystal's detention, Sheriff Anderson had succeeded Sheriff Van Vleet).

In addition to the written needs assessment, one of the auditors, Cindy Malm, met with Sheriff Van Vleet to discuss the audit results. *Malm Depo.*, dkt. 189-5, at 11. The purpose of the meeting was to advise Sheriff Van Vleet of what was going to be in the report, including staffing and the location of the dispatcher's monitors. *Id.* However, Malm admitted at her deposition that she could not "remember exactly what [she and Sheriff Van Vleet had] discussed, but . . . [she felt she] would have brought up at least the majority" of the important issues the audit identified. *Id.* at 16.

## 2. The Jail's Suicide Prevention Policy

The jail has written procedures to identify and manage suicidal detainees. When a detainee is brought to the jail, she is asked a series of questions to determine if she is suicidal. *Jail Policy Manual*, dkt. 135, ex. 45, at 40. If jail staff feels that the inmate is "potentially suicidal," the policy mandates a series of actions be taken in response. *Id.* at 6, 40. This includes placing the detainee in a holding cell, visually checking on the inmate at least every fifteen minutes, and arranging for the detainee to be evaluated by mental health professionals. *Id.* at 6. Although the policy is not perfectly clear, it also seems to require that the detainee be transferred to a mental health facility. *Id.*

## DISCUSSION

### 1.     Motion to Reconsider

Previously, this Court held that Crystal's estate could bring its 42 U.S.C. § 1983 claims despite the common law rule, applied in Idaho, that a tort victim's claim abates at death. *March 4, 2011 Memo. Decision & Order*, dkt. 47.  Allowing claims to abate, the Court reasoned, impermissibly undermines § 1983's ability to deter unconstitutional conduct that results in the tort victim's death.  The defendants ask the Court to reconsider this ruling in light of contrary opinions from the Idaho Supreme Court, *Hoagland v. Ada County*, 303 P.3d 587 (Idaho 2013), and this Court, *Bach v. Idaho State Board of Medicine*, 2012 WL 175417 (D. Idaho Jan. 20, 2012).  The Court is convinced that its prior ruling in this case was, and remains, correct.  *See S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1100 (9th Cir. 2010) (requiring, *inter alia*, clear error before a motion for reconsideration will be granted).

In *Hoagland*, the Idaho Supreme Court considered whether the estate of a detainee who committed suicide while in the Ada County Jail could bring a deliberate indifference claim under § 1983 in the absence of a Idaho statute authorizing survivorship actions. 303 P.3d at 595.  The court held that the estate could not because, under Idaho common law, the detainee's "§ 1983 claim abated with his death." *Id.*  In so holding, the court

rejected the argument that there should be a different result in cases where the

constitutional violation caused the tort victim's death, as opposed to cases where it did

not. *Id.* at 596. According to the Idaho Supreme Court, "[n]either Idaho nor federal law

makes this distinction." *Id.* The Ninth Circuit has since held that this distinction exists,

and it is "crucial." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1104 (9th Cir.

2014).

The issue in *Chaudhry* was whether a California statute that limits recovery in a

survivorship action to exclude pain and suffering damages applied in a § 1983 suit where

death was caused by a constitutional violation. The court held that the California statute

did not control. That conclusion advanced "[o]ne of Congress's primary goals in

enacting § 1983"—"provid[ing] a remedy for killings unconstitutionally caused or

acquiesced in by state governments," *id.* at 1103—by avoiding the "perverse effect of

making it more economically advantageous for a defendant to kill rather than injure his

victim," *id.* at 1104. *Chaudhry*'s reasoning supports the Court's prior conclusion that

Idaho's rule of abatement conflicts with § 1983.

The defendants argue that *Chaudhry* is distinguishable because it dealt with a

statute and not a common law rule. This argument is unpersuasive. First, 42 U.S.C. §

1988, by its very terms, displaces both the common law and state statutes if either is

"inconsistent with the Constitution and laws of the United States." Second, it was the

statute's *effect* that concerned the Ninth Circuit. The source of the law is immaterial

where the result is "tantamount to a prohibition" on recovery. *Chaudhry*, 751 F.3d at 1104.

*Bach* did not expressly address the distinction between cases in which constitutional torts cause death and those that do not. The parties had not raised this specific issue, and the Court applied the Idaho rule without discussion or analysis. 2012 WL 175417, at *6. In any event, the Court is now persuaded that *Bach* was wrongly decided on that point and should not be followed in light of *Chaudhry*. Therefore, the Court will not reverse its prior decision that Crystal's estate may pursue its § 1983 claims.

## 2.     Summary Judgment

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 247-48 (1986). There must be a genuine dispute as to any material fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002); see also Fed.R.Civ.P. 56(e). In determining admissibility for summary judgment purposes, it is

the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay).

### A.      Qualified Immunity

"[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). It "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (internal quotation marks omitted).

Qualified immunity is a two-step inquiry. First, do the facts taken in a light most favorable to the plaintiff make out the violation of a constitutional right? *Pearson*, 555 U.S. at 232. Second, was the law "clearly established" at the time of the violation? *Id.* Under the second prong, "[c]ourts do not require a case directly on point, but existing precedent must have placed the statutory or constitutional

question beyond debate." *C.f. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 986 (9th Cir. 2011) (internal quotation marks omitted). The contours of the right must be described with reasonable particularity, rather than cast at a high level of generality. *Id.* The purpose is to ensure the law gives fair notice to government officials so that "a reasonable official would understand that what he is doing violates that right." *Id.* (internal quotation marks omitted).

On appeal in this case, the Ninth Circuit concluded that the plaintiffs have satisfied the first prong of a qualified immunity analysis. Downs and Long therefore focus on the second prong. Because none of the jail's staff was subjectively aware that Crystal posed a heightened risk of suicide, their argument goes, the plaintiffs' claim would require deputies to "conduct a detailed and exhaustive evaluation of whether [a detainee] is suicidal" "at the booking stage" regardless of whether that detainee displays a risk of suicide. *Def.'s Mem. in Support of Summ. J.*, dkt. 93-1, at 16. That obligation, Downs and Long conclude, does not exist or, at least, did not exist on August 25, 2009.

The problem with this argument is that the Ninth Circuit determined that there is evidence in the record sufficient for a jury to conclude that Downs and Long were subjectively aware of Crystal's imminent risk of suicide. Furthermore, Downs and Long do not argue that, given their awareness, they took appropriate measures to protect Crystal. As a result, the Court must assume for the purposes of summary judgment that Downs and Long were deliberately indifferent to that risk. "It is clearly established that

the [Fourteenth] Amendment protects against deliberate indifference to a detainee's serious risk of suicide." *Conn v. City of Reno*, 591 F.3d 1081, 1102 (9th Cir. 2009), *vacated* 131 S. Ct. 1812 (2009), *reinstated* 658 F.3d 897 (9th Cir. 2011); *see also Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1245 (9th Cir. 2010). Therefore, Downs and Long are not immune from suit on this claim.

### B.     Caribou County's *Monell* Liability

The County cannot be held vicariously liable for the torts of its agents under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978). Only if the County's official policy, custom, or pattern was the actionable cause of the constitutional violation at issue can it be held liable. *Tsao v. Desert Palace, Inc.* 698 F.3d 1128, 1143 (9th Cir. 2012). "A policy is 'a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (quoting *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (per curiam)). The Ninth Circuit has recognized two types of policies for which the County may be held liable—policies of action and policies of inaction. *Tsao*, 698 F.3d at 1143. The former is also referred to as a direct route to liability, while the latter is also referred to as an indirect route. *See Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1185-86 (9th Cir. 2002).

When the policy at issue concerns affirmative action, plaintiffs "can prove that the [County] acted with the state of mind required to prove the underlying violation, just as a

12

plaintiff does when he or she alleges that a natural person has violated his federal rights." *Gibson*, 290 F.3d at 1185. The County may also be liable if its inaction was the "moving force behind [its] employee's violation of [the plaintiffs'] constitutional right[s]." *Id.* at 1194. However, because *Monell* does not allow for *respondeat superior* liability, the plaintiffs must show that the County's omission "amounts to deliberate indifference to the plaintiff[s'] constitutional rights." *Tsao*, 698 F.3d at 1143 (internal quotation marks omitted).

The plaintiffs' primary challenge is to the sufficiency of the County's staffing policy. The plaintiffs argue the staffing policy created a situation where routine monitoring of Crystal did not occur and no one was available to give emergency assistance to Crystal. The risk of harm created by the jail's staffing policy was compounded by the jail's custom of placing the dispatcher's monitors in a place where they could not easily be seen, which increased the chance a detainee would go unmonitored for longer periods of time. The plaintiffs refer to the jail's staffing and monitoring policies as both policies of action and inaction, for which the County is liable directly and indirectly. However, the plaintiffs' alternative theories of liability are really the same. The vocabulary simply changes. Saying that staffing the jail with one deputy and a dispatcher posed a substantial risk of harm to Crystal, *e.g., Pls.' Brief to 9th Cir.*, dkt. 191, ex. 3 at 35, is the same as saying that the County's failure to adequately staff the jail created the risk, *e.g., id.* at 38. These are the types of omissions for which the County may be held directly liable. *See Gibson*, 290 F.3d at 1188; *Cabrales v. Cnty. of*

13

*Los Angeles*, 886 F.2d 235 (9th Cir. 1989) (holding that *City of Canton v Harris*, 489 U.S. 378 (1989), did not affect the circuit's holding that "the County's policy of understaffing the jail with psychiatrists was itself unconstitutional under the fourteenth amendment"). Therefore, the Court will analyze the sufficiency of the jail's staffing and monitoring policies under the direct theory of liability.

### i.    Deliberate Indifference to a Serious Risk of Suicide

Sometimes discussed as a violation of its duty to provide necessary medical care to detainees, *Gibson*, 290 F.3d at 1187, other times as a violation of its duty to protect detainees, *Clouthier*, 591 F.3d at 1242, the County may not remain deliberately indifferent to the substantial risk of harm to suicidal detainees created by its policies. In this context, the deliberate indifference standard requires the plaintiffs to prove that the County was actually aware that its staffing and monitoring policies posed a substantial risk of harm to suicidal detainees. *Gibson*, 290 F.3d at 1188; *Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454, 1461 (9th Cir. 1988), *vacated* 490 U.S. 1087 (1989), *reinstated* 886 F.2d 235 (9th Cir. 1989). However, even gross negligence is a lesser degree of culpability than deliberate indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . ." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

In support of their direct theory of liability, the plaintiffs point to three pieces of evidence that put the County on notice that its staffing policy posed a substantial risk of

14

danger to detainees: (1) the ISA letters, (2) the RMC needs assessment, and (3) Malm's conversation with Sheriff Van Vleet about the findings of the needs assessment. The County disputes that any of this evidence shows that the County was subjectively aware that its policies posed a substantial risk of harm.[1]

The County argues that the ISA letters raised concerns over deputy safety, not inmate safety. As a result, the County continues, the ISA letters would not have put the County on notice as to the "specific potential danger" of inmate suicide. Certainly, the letters' warnings regarding the County's staffing policy refer to the heightened risk that the lone deputy would face if, for example, a fight broke out in the jail, but that is hardly the only "perilous position" that springs to mind. Equally easy to imagine is a situation where the detention deputy is preoccupied and therefore unavailable to respond should a detainee attempt suicide. *See id.* ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").

That the County actually interpreted the letters to refer to inmate suicide is supported by (1) the RMC Needs Assessment and (2) Malm's conversation with Sheriff Van Vleet regarding the needs assessment. Again, the needs assessment specifically warned that the staffing policy increased the likelihood that a detainee could successfully

---

[1] The Court rejects the plaintiffs' argument that the County waived its arguments regarding notice. The Court finds that the County's prior briefing on the issue was sufficient to preserve this issue. *See Cnty.'s Reply Br. on Sum. J.*, dkt. 144, at 10. Moreover, the Court will consider the County's arguments in light of the Ninth Circuit's disposition. *Van Orden v. Caribou Cnty.*, 546 F. App'x 647 (9th Cir. 2013).

commit suicide. Malm also testified at her deposition that she would have discussed the risks posed by the jail's staffing policy with Sheriff Van Vleet.

The fact that the County had in place a suicide prevention policy does not necessarily mean that it was *not* deliberately indifferent to the risk posed by its staffing and monitoring policies, although it makes it a close question. The existence of the jail's suicide prevention policy strongly suggests that the County did not turn a blind eye to the issue. However, the plaintiffs argue the County's suicide prevention policy was deficient in ways that are exacerbated by the staffing policy. For example, the plaintiffs argue that suicidal detainees are placed in the holding cell most removed from the remainder of the jail, which makes it less likely that an overly busy deputy will be aware of what is occurring in that cell. Moreover, the RMC Needs Assessment's warnings convey the message that jail staff could not effectively follow the suicide prevention policy. Of course, the County cannot be liable merely because it was negligent in the administration of the jail. Whether the interaction of these policies amounts to mere negligence or deliberate indifference is best left to the jury to decide. *See Wood v. Ostrander*, 879 F.2d 583, 588 n.4 (9th Cir. 1989) (stating that a question of fact exists if reasonable minds could disagree over whether a person is negligent or deliberately indifferent).

The County tacitly acknowledges the impact of the RMC Needs Assessment and Malm's testimony to its case. It attempts to avoid that impact by arguing that (1) it was unaware of the RMC Needs Assessment and (2) Malm only speculated that she raised the staffing concerns with Sheriff Van Vleet. These arguments are wholly unpersuasive.

As the designated representative for RMC, Walt Femling testified that the Needs Assessment was sent to Sheriff Van Vleet. The County challenges Femling's ability to testify to this fact because he was not involved in preparing the needs assessment nor was he necessarily the person who sent the needs assessment. It is irrelevant that Femling was not the author of the needs assessment. Its content speaks for itself. The issue is whether the needs assessment was sent to Sheriff Van Vleet. It is also irrelevant whether Femling mailed the needs assessment himself. As the designated representative of RMC, Femling could "testify about information known or reasonably available to the organization." *Fed. R. Civ. P.* 30(b)(6). "Thus, [Femling] was free to testify to matters outside his personal knowledge as long as they were within the corporate rubric," which certainly includes mailing the needs assessment. *PPM Fin., Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 895 (7th Cir. 2004).

Malm's inability to testify exactly about her conversation with Sheriff Van Vleet does not render her testimony useless. Malm's deposition testimony can support a motion for summary judgment so long as it would be admissible in evidence at trial. *Fed. R. Civ. P.* 56(c); *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Malm's hazy memory, while ripe for impeachment, does not mean her testimony is inadmissible. *See United States v. Peyro*, 786 F.2d 826, 830-31 (8th Cir. 1986) (upholding the admission of a witness's testimony of her "broad, general recollection" of events despite the witness's "very substantial memory problems," emotional instability,

and admission that she remembered "'certain moments . . . , but nothing at all specific in any of it'") (internal quotation marks omitted).

### ii. Direct Liability Causation

The County also challenges whether its staffing policy was the actual cause of Crystal's death. The policy "is an actual cause of [Crystal's] injury only if the injury would not have occurred 'but for' that [policy]." *White v. Roper*, 901 F.2d 1501, 1505 (9th Cir. 1990). The County argues that the plaintiffs "failed to provide any evidence that, had the jail provided more staffing or different monitoring, Crystal Bannister would not have succeeded in taking her own life." *Defs. Br. to Ninth Cir.*, dkt. 189-2, at 50. Underlying the County's argument is the assumption that any additional staff would have been subjectively unaware of Crystal's risk of suicide and, therefore, not taken any additional measures to protect Crystal.

The County's focus on the subjective awareness of the hypothetical additional officers misses the point. Under a direct *Monell* claim, the County's liability does not hinge on the subjective mindset of the individual officers. *See Tsao*, 698 F.3d at 1143. The County can "be liable under § 1983 for improper training or improper procedure even if the individual officer charged with violating the plaintiff's constitutional rights was exonerated." *Fairley*, 281 F.3d at 917.

Furthermore, the County's speculation as to what additional officers would or would not have done had they been at the jail will not defeat plaintiff's claim. "'If reasonable persons could differ' on the question of causation then 'summary judgment is

inappropriate and the question should be left to a jury.'" *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1080 (9th Cir. 2013) (quoting *White*, 901 F.2d at 1506). It is entirely reasonable to think that, had an additional detention deputy been on duty that night, the frequency at which Crystal was monitored would have doubled and timely lifesaving steps might have been taken. As Deputy Downs stated, the presence of two deputies on the floor made timely monitoring of detainees easy. *Downs Depo.*, dkt. 135, ex. 20, at 234. By demonstrating that the County's policy posed a "substantial risk of harm, and [Crystal] actually suffered precisely the type of harm that was foreseen," the plaintiffs have "demonstrate[d] a triable issue of fact as to causation." *Id.* at 1080-81.

### C.    Plaintiffs' State Law Wrongful Death Claims

#### i.    Bonding Requirement

Idaho Code § 6-610(2) requires plaintiffs to prepare and file a bond "[b]efore any civil action may be filed against any law enforcement officer." If a plaintiff does not file the required bond, and if the officer objects, dismissal of the claim is mandatory. *Id.* § 6-610(5); *Beehler v. Fremont Cnty.*, 182 P.3d 713, 716 (Idaho 2008). Crystal's estate secured a valid waiver of the bonding requirement on the grounds that the estate was financially incapable of obtaining the required bond. However, plaintiffs Bannister and Waleske did not file a bond or obtain a valid waiver. Furthermore, Bannister and Waleske have not shown that they could not afford the bond (or given any other reason to justify waiving the bonding requirement), and they have not provided any legal authority to support their one-sentence argument that estate's waiver "should apply to [them]."

19

*Pls.' Opposition to Sum. J.*, dkt. 137, at 20.  Therefore, the Court will dismiss plaintiffs

Bannister and Waleske's wrongful death claim.[2]

### ii.     Idaho Tort Claims Act

### a.     Caribou County

The County argues that it is immune from suit under the Idaho Tort Claims Act

("ITCA"), citing I.C. § 6-904(3).  The plaintiffs do not challenge this assertion.  Instead

they argue that any immunity the ITCA affords Caribou County "applies only to

plaintiffs' state-law claims."  *Pls. Opposition to Sum. J.*, dkt. 137, at 19.  The Court

agrees. Therefore, the Court will dismiss all the plaintiffs' state law wrongful death

claims against Caribou County.

### b.     Deputy Downs and Dispatcher Long

Downs and Long argue they are immune under the ITCA, citing I.C. § 6-904B.

That section does not apply if the officers acted with "gross negligence or reckless,

willful and wanton conduct."  *Id.*  The ITCA defines gross negligence as "the doing or

failing to do an act which a reasonable person in a similar situation and of similar

responsibility would, with a minimum of contemplation, be inescapably drawn to

recognize his or her duty to do or not do such act and that failing that duty shows

deliberate indifference to the harmful consequences to others."  I.C. § 6-904C(1).  "[T]o

establish gross negligence under I.C. § 6-904B, there must be evidence showing not only

---

[2]         Because the Court is dismissing Plaintiff Waleske's wrongful death claim for failing to
file the requisite bond, it is unnecessary to consider whether she filed, or should be excused from
filing, the notice of tort claim required by I.C. § 6-906.

the breach of an obvious duty of care, but also showing deliberate indifference to the harmful consequences to others." *Block v. City of Lewiston*, __ P.3d __, 2014 WL 2735287, at *4 (Idaho 2014) (internal quotation marks omitted). "This means the analysis for the exception is basically the same as the analysis of the § 1983 claim for deliberate indifference to a medical need." *Mays v. Stobie*, 2011 WL 2160364, at *19 (D. Idaho June 1, 2011). Downs and Long argue that they were not grossly negligent because they were unaware that Crystal was suicidal. This argument fails given the Ninth Circuit's conclusion that there is a triable issue over the defendants' subjective awareness.

### D. Plaintiffs' Remaining Issues on Summary Judgment.

#### i. Immunity from Punitive Damages.

As defendants admit, a jury could award punitive damages against Deputy Downs and Dispatcher Long in certain circumstances on plaintiffs § 1983 claims. *See Smith v. Wade*, 461 U.S. 30, 56 (1983) ("[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."). The County is also correct that it cannot be held liable for punitive damages on plaintiffs § 1983 claims. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). However, neither Downs nor Long are exposed to punitive damages on plaintiffs' state law claims. I.C. § 6-918.

#### ii. Failure to Mitigate Damages & Equitable Remedies

The County withdrew its argument that plaintiffs have failed to mitigate damages. *Dkt.* 99 at 6. Additionally, plaintiffs have not requested equitable relief. *See First Amend. Compl.*, dkt. 52. Therefore, the Court will dismiss these two issues as moot.

## CONCLUSION

In summary, the defendants' motion to reconsider is denied. Deputy Downs and Dispatcher Long are not immune from suit on the plaintiffs' § 1983 and wrongful death claims. However, plaintiffs Bannister's and Waleske's wrongful death claims against Deputy Downs and Long will be dismissed under I.C. § 6-610(5). The County is immune from suit on all the plaintiffs' wrongful death claims under the ITCA. Whether the County was subjectively aware of the risk posed by its staffing and monitoring policies, and whether those policies caused the plaintiffs' injuries are questions of fact that preclude summary judgment on the plaintiffs' *Monell* claims.

## ORDER

**IT IS ORDERED THAT:**

1.     Defendants' Motion to Reconsider (dkt. 188) is **DENIED**.

2.     Defendants' Motion for Summary Judgment (dkt. 93) is **GRANTED in part and DENIED in part**, as stated herein.

3.     Plaintiffs' Motion for Summary Judgment (dkt. 86) is **GRANTED in part and DENIED in part**, as stated herein.

DATED: October 13, 2014

B. Lynn Winmill
Chief Judge
United States District Court